UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SANTO R. MAZZOLA,                                   :
                                                    :
                        Plaintiff,     :
                                                    :    **MEMORANDUM & ORDER**
             v.                                    :    19-CV-1158 (WFK)
                                                    :
COMMISSIONER OF SOCIAL SECURITY,                    :
                                                    :
                        Defendant.     :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Santo R. Mazzola ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) alleging the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") improperly denied Plaintiff's application for Social Security Disability Insurance ("SSDI") benefits. ECF No. 1. Plaintiff moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure[1] and Defendant moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 20, 24. For the reasons set forth below, Defendant's motion is GRANTED and the Court AFFIRMS the decision of the Social Security Administration ("SSA").

## PROCEDURAL HISTORY

On May 6, 2015, Plaintiff filed a claim for Social Security Disability Insurance ("SSDI") benefits, alleging a disability onset date of April 18, 2015. Administrative Record ("Tr."), ECF No. 27, at 17. The state agency denied Plaintiff's claim on July 31, 2015, and on September 7, 2017, Plaintiff appeared for a hearing before Administrative Law Judge ("ALJ") Mark Solomon. *Id.* at 49. Plaintiff did not appear with an attorney at his hearing. *Id.* at 17. On October 24, 2017, ALJ Solomon issued a decision denying Plaintiff's claim. *Id.* at 17-23. Plaintiff timely requested Appeals Council review of ALJ Solomon's decision. However, on October 23, 2018,

---

[1] While Plaintiff describes his motion as a motion for summary judgment, the Court construes his motion as a motion for judgment on the pleadings under Rule 12(c), as Plaintiff presents no evidence beyond the pleadings. Rather, like Defendant, Plaintiff seeks a decision from the Court based on the administrative transcript at ECF No. 27.

1

the Council denied Plaintiff's request for review, and the Commissioner took no further action. *Id.* at 1.  Therefore, this Court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final decision.  It does so now.

## FACTS

The evidence in this case is undisputed, and the Court adopts Defendant's factual recitation.  Def. Mem., ECF No. 25, at 5-11.

## DISCUSSION

I. Legal Standards

a. *Standard of Review*

When a claimant challenges a denial of disability benefits by the Social Security Administration ("SSA"), the Court's function is not to evaluate *de novo* whether the claimant has a disability but rather to determine "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla"—it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation omitted).  The reviewing court must examine the entire record, weighing the evidence on both sides to ensure the claim "has been fairly evaluated."  *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

The Commissioner, not the courts, "weigh[s] the conflicting evidence in the record" and resolves such conflicts.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  "While the ALJ need not resolve every conflict in the record, the crucial factors in any determination must be set forth with sufficient specificity to enable the reviewing court to decide whether the

2

determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 268-69 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation and alterations omitted). To fulfill this burden, the ALJ must "adequately explain [his or her] reasoning in making the findings on which [his or her] ultimate decision rests" and "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269).

  b. *Determination of Disability*

To be eligible for SSDI benefits, an individual must be "aged, blind, or disabled" as defined in 42 U.S.C. § 1382c. *See* 42 U.S.C. § 423(c). For SSDI purposes, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(1)(A).

To evaluate a disability claim, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 416.920. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If not, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 416.920(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not

3

match any of the listings, the fourth step requires the Commissioner to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform their past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the fifth and final step is to determine whether the claimant can perform any job based on his or her RFC and other vocational considerations, such as work experience, age, and education. *Id.* § 416.920(a)(4)(v). The claimant bears the burden of proving the first four steps, then the burden shifts to the Commissioner at the fifth step. *Rosa v. Callahan*, 168 F.3d 72, 77-78 (2d Cir. 1999).

II.   ALJ Solomon's Decision

In his October 24, 2017 decision, ALJ Solomon found (1) Plaintiff had not engaged in substantial gainful activity during the relevant period, Tr. at 19; (2) Plaintiff had severe impairments of coronary artery disease with a history of myocardial infarction, diabetes mellitus, and a left hip, total replacement, *id.*; (3) Plaintiff's severe impairments did not satisfy the criteria of a listed impairment and Plaintiff had an RFC to perform less than the full range of light work as defined in 20 CFR 404.1567(b), namely, Plaintiff could sit 8 hours with normal breaks and stand/walk for 2-hours each, occasionally lift/carry 10-pounds, occasionally climb, balance, stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to respiratory irritants, *id.* at 19-20; (4) Plaintiff was capable of performing past relevant work as a customer service representative, *id.* at 23; and thus (5) Plaintiff was not disabled within the meaning of the SSA during the relevant period, *id.*

*Medical Evidence from Relevant Period*

The medical evidence from the relevant period—April 18, 2015 to June 30, 2017—includes records from (1) Plaintiff's visits to the hospital following his heart attack in 2015 and (2) a consultative examination with internist Dr. Vinod Thukral.

The 2015 records memorialize Plaintiff's visit to Mount Sinai Beth Israel Hospital on April 18, 2015. Tr. at 223. According to these files, Plaintiff went to the hospital after experiencing "severe chest pain," which he described as "squeezing and tight" in "the left chest area." *Id.* Plaintiff was then diagnosed with a heart attack and transferred to Maimonides Medical Center ("Maimonides") in "critical but stable condition." *Id.* at 238; 264 ("You were in the hospital because heart attack treated with stent and medicine. The medical word for your condition is Inferior ST Elevation Myocardial Infarction status post Cardiac Catheterization with Drug Eluting Stent to Right Coronary Artery."). Plaintiff subsequently had a stent implanted and was discharged to home care with instructions to take a variety of medications. *Id.* at 264.

Plaintiff returned to Maimonides on June 10, 2015 for a follow-up appointment. *Id.* at 400-08. Plaintiff reported numbness, *id.* at 402, but the follow-up examination findings were otherwise normal. *See id.* at 400-08 (reporting Plaintiff had "[n]o chest pain, no dyspnea, no palpitations," had normal hearing, vision, cognition, and ambulation, "perform[ed] personal tasks without assistance" and had "no difficulty doing errands alone," was "at low risk for falls," was "[a]lert and oriented, [m]otor exam [was] normal, sensory exam [was] normal, [had] normal reflexes," and "[could] move[] all extremities.").

On July 21, 2015, Plaintiff had another follow-up appointment at Maimonides. At that appointment, Plaintiff's condition was largely the same, except he no longer reported any

5

numbness. *Id.* at 394 (reporting "negative" results for neurological symptoms including "numbness"), 392-96 (reporting Plaintiff had "[n]o chest pain, no dyspnea, [n]o palpitations," "fe[lt] well," was "[c]ompliant with meds and diet," had normal hearing, vision, cognition, and ambulation, "perform[ed] personal tasks without assistance," had "no difficulty doing errands alone," was "at low risk for falls," was "[a]lert and oriented, [m]otor exam [was] normal, sensory exam [was] normal, [and had] normal reflexes."). Plaintiff also underwent an echocardiogram at the July 21, 2015 exam, *id.* at 397-98, the results of which revealed "normalization of [the left ventricular] function." *Id.* at 395.

Further evidence from the relevant period includes records from Dr. Vinod Thukral's June 10, 2017 consultative examination of Plaintiff. *Id.* at 420-25. At that exam, Plaintiff reported a history of hypertension, hyperlipidemia, and his 2015 heart attack and subsequent diagnosis of acute coronary artery disease. *Id.* at 420. Plaintiff also reported he experienced shortness of breath after walking four blocks, but did not have chest pain, palpitation, dizziness, or other related symptoms at the exam. *Id.* Plaintiff also reported "decreased visual acuity in both eyes diagnosed about six years ago due to diabetic retinopathy." *Id.* Plaintiff stated he had "bilateral lower extremity cramps and numbness for the last (about) seven years due to diabetic neuropathy," with no other complications from the condition. *Id.* at 421. Plaintiff further reported he experienced sharp and intermittent right hip pain. *Id.* With respect to activities of daily living, Plaintiff informed Dr. Thukral he "[could not] do the cooking, cleaning, or laundry due to the right hip pain, along with the exertional dyspnea," but that he "[did] the shopping once a week," and "shower[ed], bath[ed], and dress[ed] daily." *Id.*

As to examination findings, Dr. Thukral noted Plaintiff "walk[ed] with a limp favoring the left lower extremity," used a cane to walk, and "[a]ttempted to walk without the cane, [but]

6

could not do it due to right hip pain." *Id.* at 422.  Plaintiff could not walk on his heels or toes or squat "due to right hip pain." *Id.*  Dr. Thukral concluded "[o]n the basis of the examination, the cane [was] medically necessary at [that] time for ambulation." *Id.*  Dr. Thukral also noted "marked tenderness on movement" of Plaintiff's right hip, with limited flexion and extension. *Id.* at 423.  Dr. Thukral found no sensory deficit, and reported Plaintiff had "[s]trength 5/5 in the upper and lower extremities." *Id.* at 424.

Dr. Thukral opined on "the basis of the examination," Plaintiff had "no limitation for sitting, but ha[d] marked limitations for standing (for a long time), bending, pulling, pushing, lifting, carrying and any other such activities." *Id.*  Dr. Thukral further stated Plaintiff "should avoid activities requiring moderate to greater exertion due to the history of [coronary artery disease]." *Id.*

On June 10, 2017, Dr. Thukral also completed a "Medical Source Statement of Ability to Do Work-Related Activities" for Plaintiff. *Id.* at 427-33.  According to that statement, Plaintiff could frequently lift and carry up to ten pounds and sit for up to eight hours. *Id.* at 427-28.  Dr. Thukral also indicated Plaintiff could stand or walk for 15 minutes at a time, and for a total of two hours each workday. *Id.* at 428.  Dr. Thukral also reported Plaintiff could not walk without a cane, could never climb stairs, ramps, ladders, or scaffolds, and could never balance, stoop, kneel, crouch, or crawl. *Id.* at 428-30.  With respect to activities of daily living, though, Dr. Thukral indicated Plaintiff could perform activities like shopping, traveling without a companion for assistance, could walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable place with the use of a handrail, prepare a simple meal and feed himself, and take care of his personal hygiene. *Id.* at 432.

7

### III. ALJ Solomon's Decision Is Supported by Substantial Evidence

Plaintiff raises six arguments in support of his motion, and an additional argument in his reply. *See* ECF Nos. 20-1, 23. However, his arguments essentially boil down to the following claims: (1) ALJ Solomon should have found Plaintiff's neuropathy and osteoarthritis to be severe impairments, (2) ALJ Solomon should have placed greater weight on Dr. Thukral's opinion in formulating Plaintiff's RFC, and (3) ALJ Solomon's RFC determination is not supported by the record as a whole. For the reasons below, the Court does not find any of these arguments availing.

*Neuropathy and Osteoarthritis*

Plaintiff argues ALJ Solomon erred by not finding Plaintiff's neuropathy and osteoarthritis to be severe impairments. Pl. Mem. at 13-14. In support of this argument, Plaintiff states he "noted that he suffers, Diabetic Neuropathy of both feet notably in toes. He described numbness and tingling sensation of the toes and pain with walking." *Id.* at 14 (citing Tr. at 413-16). Plaintiff continues, "[a]dditionally, Plaintiff noted he suffers from bilateral lower extremity cramps and numbness due to said Diabetic Neuropathy." *Id.* (citing Tr. at 420-25).

To qualify as "severe," an impairment must "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Moreover, an impairment must be established by "objective medical evidence from an acceptable medical source," rather than a claimant's own "statement of symptoms," diagnosis, or medical opinion. *Id.* Additionally, to qualify as "severe," an impairment must significantly limit a claimant's physical or mental capacity to

perform basic work activities, which include functions such as lifting, carrying, sitting, seeing, hearing, speaking, and walking. 20 C.F.R. § 404.1522.

Here, Plaintiff cites his subjective reports of neuropathy and osteoarthritis symptoms to support his argument. *See* Pl. Mem. at 13-14. However, there is little "objective medical evidence" from the relevant period in the record to support Plaintiff's argument that his neuropathy and osteoarthritis are severe impairments. For instance, notes from a consultative examination from 2012 indicate Dr. Susie Chow, D.O. diagnosed Plaintiff with diabetic neuropathy and cataloged Plaintiff's complaints that he had "numbness and tingling sensation of the toes," "pain with walking," and the "pain is throbbing in nature and is on a pain scale of greater than 5/10." Tr. at 413. However, Dr. Chow's own observations indicated Plaintiff could "walk on heels and toes without difficulty" and had a normal stance. *Id.* at 414. Similarly, Plaintiff cites to Dr. Thukral's report that Plaintiff "has bilateral lower extremity cramps and numbness for the last (about) seven years due to diabetic neuropathy" in support of his claims. *Id.* at 421. However, the functional limitations Plaintiff reported to Dr. Thukral relate not to Plaintiff's diabetic neuropathy or osteoarthritis, but to his hip—which ALJ Solomon *did* classify as a severe impairment. *Id.* at 420-425, 19.

Moreover, as Defendant correctly argues, an impairment is severe only if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1522. The record here does not show Plaintiff's neuropathy or osteoarthritis created such limitations. As such, it was not erroneous for ALJ Solomon to find Plaintiff's neuropathy or osteoarthritis not to be severe impairments. Moreover, as Defendant notes, even if such a determination were in error— which, here, it is not—that error is harmless, since ALJ Solomon found Plaintiff had other severe

9

impairments and continued his analysis beyond this point. *Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir. 2010) (summary order).

*RFC Finding: Reduced Range of Light Work*

Plaintiff argues further ALJ Solomon's RFC formulation is not supported by substantial evidence. In particular, Plaintiff argues the ALJ did not properly consider Dr. Thukral's opinion or evidence in the record showing Plaintiff is not capable of sedentary work, let alone light work. Again, the Court is not convinced by these arguments and finds ALJ Solomon's RFC formulation is supported by substantial evidence.

ALJ Solomon did not err in according Dr. Thukral's opinion partial weight. The Court agrees with Defendant's arguments regarding Dr. Thukral's opinion: some parts of the record, including portions of Dr. Thukral's exam notes, are inconsistent with Dr. Thukral's medical opinion. *See* Def. Mem. at 17-18. As such, the Court finds substantial evidence supported ALJ Solomon's decision to disregard certain aspects of Dr. Thukral's opinion. For instance, while Dr. Thukral opined Plaintiff could only occasionally pull with his hands, Tr. at 429, the doctor also noted during his 2017 consultative examination of Plaintiff that he demonstrated full grip strength and his hand and finger dexterity were intact. *Id.* at 22, 424. Similarly, Dr. Thukral opined Plaintiff could never climb stairs or ramps, *id.* at 430, but contradictorily noted Plaintiff could "climb a few steps at a reasonable pace with the use of a single handrail," *id.* at 432.

Moreover, Dr. Thukral's opinion is not squarely inconsistent with ALJ Solomon's decision. As Defendant points out, Dr. Thukral noted Plaintiff could stand and walk for two hours during an eight-hour workday. Tr. at 428. Similarly, ALJ Solomon concluded Plaintiff was able to "stand/walk for 2-hours each." *Id.* at 20. As another example, Dr. Thukral opined

Plaintiff could frequently lift and carry up to ten pounds. *Id.* at 427. For his part, ALJ Solomon determined Plaintiff could only occasionally lift or carry ten pounds. *Id.* at 20. Ultimately, ALJ Solomon did not err in assigning partial weight to Dr. Thukral's opinion. ALJ Solomon reached similar conclusions to Dr. Thukral regarding some of Plaintiff's functional limitations where those limitations were supported by the record. And as portions of Dr. Thukral's opinion were inconsistent with his exam notes and with the opinion itself, ALJ Solomon did not err in rejecting certain portions of Dr. Thukral's opinion. *See Pellam v. Astrue*, 508 Fed. App'x 87, 89-90 (2d Cir. 2013) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations, and substantial evidence supported the ALJ's decision not to adopt many of [a consultative examiner's] conclusions").

In a reply brief, Plaintiff raises for the first time the argument that the ALJ failed to consider Dr. Thukral's opinion in accordance with the factors outlined in 20 C.F.R. § 404.1527(c). Pl. Reply, ECF No 23. However, as Defendant correctly asserts, this argument is waived as Plaintiff failed to raise it in his opening brief. *See United States v. Karimu*, 470 F. App'x 45, 46 (2d Cir. 2012) ("By failing to raise the argument until his reply brief, [plaintiff] has waived the issue") (internal citation omitted). However, even if Plaintiff had properly raised this argument, it would fail regardless: an ALJ is not required to expressly discuss each factor under 20 C.F.R. § 404.1527(c). *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). Here, it is clear ALJ Solomon considered the relevant factors, as he thoroughly assessed Dr. Thukral's opinion against the record and also noted Dr. Thukral was a consultative examiner who examined Plaintiff only once. Tr. at 22.

11

Finally, Plaintiff's claim that the ALJ's decision is inconsistent with the record also fails.  As already explained, the evidence in the record from the relevant period includes: (1) records from Plaintiff's 2015 hospital visit and follow-up visits related to his heart attack; and (2) records from a consultative examination with Dr. Thukral in 2017.  ALJ Solomon thoroughly considered each of these categories of records in formulating Plaintiff's RFC.  *See id.* at 20-23.  As Defendant argues, Plaintiff bears the burden to furnish evidence to establish his disability and inability to perform past work.  *See Rosa*, 168 F.3d at 77-78 (explaining the burden is on the plaintiff to prove steps one through four of an ALJ's disability analysis).  In light of the evidence in the record put forth by Plaintiff, ALJ Solomon's RFC determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion at ECF No. 20 is DENIED, and Defendant's motion for judgment on the pleadings at ECF No. 24 is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 20 and 24, enter judgment against Plaintiff, and close this case.

**SO ORDERED.**

**s/WFK**
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 1, 2023
          Brooklyn, New York